UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELODY A. PARISI,

                        Plaintiff,

   -v-                                                    1:08-CV-606 (LEK/DRH)

UNITED STATES OF AMERICA,

                        Defendant.
_____

## MEMORANDUM- DECISION AND ORDER

Plaintiff Melody A. Parisi ("Plaintiff") brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, seeking recovery of unpaid medical expenses while allegedly in the custody of the Federal Bureau of Prisons ("BOP"). See Compl. (Dkt. No. 1). Presently before the Court is Plaintiff's Motion for default judgment. Dkt. No. 11. Also before the Court is a Motion to vacate the default and to dismiss, for judgment on the pleadings, or for summary judgment, brought by Defendant the United States of America ("the United States" or "Defendant"). Dkt. No. 12. For the reasons discussed below, Defendant's Motion to vacate the default is granted, and Plaintiff's Motion for default judgment is denied. Defendant's Motion for summary judgment is also granted and Plaintiff's Complaint is therefore dismissed.

**I.    BACKGROUND**

On January 8, 2004, Plaintiff was convicted and sentenced in the United States District Court for the Northern District of New York to a fifteen month term of imprisonment with a

three year term of supervised release.[1]  See Compl. ¶ 7; Def.'s Mem. at 1 (Dkt. No. 12, Attach. 3).
On or about December 29, 2004, while Plaintiff was serving her fifteen month sentence at the Federal Correctional Institution in Danbury, Connecticut, the BOP transferred Plaintiff to the Horizon House, Community Corrections Center ("CCC")[2] in Albany, New York, to serve the remainder of her sentence.  Compl. ¶ 9.  On March 29, 2005, Plaintiff was released due to good conduct.  Compl. ¶ 12; Dkt. No. 13, Ex. 1a.  On June 8, 2005, the Court modified the conditions of Plaintiff's supervised release and ordered that she be placed at the CCC for ninety days.  Compl. ¶ 13 and Ex. 2.  Plaintiff was released from the CCC on September 7, 2005.  Dkt. 13, Ex. 1a.

On June 29, 2007, Plaintiff filed an administrative tort claim with the BOP.  Compl. ¶ 19 and Ex. 5.  Plaintiff sought "[a]ll of the medical and other expenses [] incurred while in the custody of the Bureau of Prisons . . . ."  Compl. Ex. 5.  The BOP rejected her claim on July 23, 2007.  Id. ¶ 20 and Ex. 6.  On September 17, 2007 and November 30, 2007, Plaintiff sent additional letters to the director of the CCC, further outlining her claims.  Compl. ¶¶ 21-22 and Ex. 7-8.  On January 31, 2008, Plaintiff filed three independent tort claims with the BOP.  Compl. ¶ 23 and Ex. 9-11.  The BOP sent Plaintiff a letter on February 12, 2008, again rejecting her claims.  Compl. ¶ 24 and Ex. 12.  On March 7, 2008, Plaintiff sent a letter to the BOP requesting reconsideration of her claims. Compl. ¶ 25 and Ex. 13.  The BOP denied her motion for reconsideration on April 3, 2008.  Compl. ¶ 26 and Ex. 14.

---

[1] While Plaintiff alleges in her Complaint that she was sentenced to only one year of supervised release, the Judgment in her criminal case confirms that she was sentenced to three years supervised release.  1:01-cr-351, Dkt. No. 69.

[2] The BOP recently changed the term "Community Corrections Center" to "Residential Reentry Center."  See Def.'s Mem. at 2 n.1.

Plaintiff filed the instant Complaint on June 10, 2008, seeking $65,288.27 for her total unpaid medical expenses; $505.53 for expenses incurred on January 16, 2005, $736.64 for expenses incurred on July 12, 2005, and $64,046.10 for expenses incurred between July 17 and August 8, 2005.  Compl. ¶¶ 11, 16-17, 39.  However, Defendant asserts that on February 7, 2006, Plaintiff received a discount of her outstanding medical bills through the Albany Medical Center Hospital Charity Care Program ("Charity Care Program").  Def.'s Mem. at 13; Dkt. 13, Ex. 1b.[3]  Defendant later asserted in its reply that Plaintiff's medical bills total $6,809.96.  Reply at 2 (Dkt. No. 17).  In Plaintiff's response to Defendant's Motion, she asserts that her medical expenses were ultimately reduced to $6,809.96.  Pl.'s Mem. at 12 (Dkt. No. 15).

## II.   PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT/ DEFENDANT'S MOTION TO VACATE THE DEFAULT

### A.   Standard for vacating entry of default

The Federal Rules provide that "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  FED. R. CIV. P. 55(a).  After the Clerk has entered default against a defendant, the plaintiff may apply for a default judgment under Federal Rule of Civil Procedure 55(b).  However, it is well-settled in the Second Circuit that defaults are not favored, and that there is a strong preference for resolving disputes on the merits.  See Pecarksy v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001).

"The court may set aside an entry of default for good cause[.]"  FED. R. CIV. P. 55(c).  Courts

---

[3] While Defendant asserts in its memorandum that the Charity Care Program reduced Plaintiff's medical bills to $6,500.71, the documentation produced by Defendant shows that the Charity Care Program reduced the amount to $6,440.71.  Def.'s Mem. at 13; Dkt. 13, Ex. 1b.

must assess three criteria in determining whether to set aside a default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Courts may also consider other equitable factors, including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Id. "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause' . . . should be construed generously." Id.

### B. Discussion

Plaintiff filed a request for entry of default on September 12, 2008. Dkt. No. 9. The Clerk entered default on that date. Dkt. No. 10. The United States contends that the entry of default against it was improper, as Plaintiff failed to comply with the service requirements of Rule 4 of the Federal Rules of Civil Procedure.

The Federal Rules provide that a party suing the United States must serve the summons and complaint upon both the United States Attorney General and the United States Attorney for the district where the case was brought. FED. R. CIV. P. 4(i)(1)(A), (B). The Federal Rules further provide that "if the action challenges an order of a nonparty agency or officer of the United States," the party must serve the summons and complaint upon that agency or officer. FED. R. CIV. P. 4(i)(1)(C).

Here, Plaintiff's Complaint challenges an order of a nonparty agency– the BOP. The Complaint states that "[t]he United States, through its agency (Bureau of Prisons), wrongfully and negligently breached" duties owed to the Plaintiff. Compl. ¶ 6. However, the summons and

4

complaint were served upon the United States Attorney for the Northern District of New York and the Attorney General, but not upon the BOP.

Given Plaintiff's failure to fully comply with the service requirement of Rule 4, the Clerk's entry of default was in error. In the alternative, the Court concludes that the Defendant has met the good cause standard required to vacate the entry of default. The Court fails to see how the Defendant's reliance upon the service requirements of the Federal Rules can be regarded as a willful failure to appear that would preclude vacating the default. Even if the Defendant's reading of Rule 4 had been in error, such reading would be the kind of good faith mistake that courts may consider when deciding a motion to vacate default.

There is also no indication that Plaintiff would suffer substantial prejudice within the meaning of Rule 55(c) if the Court grants Defendant's Motion. "[D]elay alone is not a sufficient basis for establishing prejudice." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (citation omitted). Rather, "[t]he plaintiff must demonstrate that the default caused some actual harm to its ability to litigate the case, such as by diminishing the amount of available evidence, or that it relied to his detriment on the judgment entered." MacEwen Petroleum, Inc. v. Tarbell, 173 F.R.D. 36, 40 (N.D.N.Y. 1997). Plaintiff has not made such a showing here.

Furthermore, the Court finds that Defendant has made a sufficient showing of a meritorious defense as to vacate the default. To vacate a default, a defendant "need not establish his defense conclusively . . . but he must present evidence of facts that, if proven at trial, would constitute a complete defense." S.E.C. v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998) (internal quotation marks and citations omitted). As discussed below, Defendant has presented a meritorious defense to all of Plaintiff's claims. Accordingly, Defendant's Motion to vacate the entry of default is granted and the

Plaintiff's Motion for default judgment is denied.

## III. DEFENDANT'S MOTION TO DISMISS/ MOTION FOR JUDGMENT ON THE PLEADINGS/ MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

As a preliminary matter, the Court must address the appropriate standard of review for Defendant's Motion to dismiss Plaintiff's claims. The United States moves for dismissal pursuant to Rule 12(b)(6), judgment on the pleadings pursuant to Rule 12(c), or in the alternative, for summary judgment pursuant to Rule 56. The United States has included exhibits in support of its Motion. See Dkt. No. 13. When considering a motion to dismiss a complaint for failure to state a claim, a court "may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." Hirsch v. Arthur Andersen and Co., 72 F.3d 1085, 1092 (2d Cir. 1995). The same standard applies to a motion for judgment on the pleadings. See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted); Life Products Clearing, LLC v. Angel, 530 F. Supp. 2d 646, 652 (S.D.N.Y. 2008). If a court considers materials other than those listed above, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 154-56 (2d Cir. 2006).

The Federal Rules provide that a defendant may move "at any time" for summary judgment. FED. R. CIV. P. 56(b). "Pre-discovery summary judgment is the exception rather than the rule and will be granted only in the clearest of cases." Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A., 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (internal quotation and citations omitted). However, "where it is clear that the [non-moving party] cannot defeat the motion by showing facts

sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery." Id. (citing Gottlieb v. County of Orange, 84 F.3d 511, 519 (2d. Cir. 1996)).

The parties have not conducted any discovery in this case.  In her opposition to Defendant's Motion, Plaintiff does not contend that she needs discovery to properly contest the Motion.  Nor does the Court see how discovery would be necessary, given that the parties are in substantial agreement as to the material facts, but dispute only the legal interpretation of those facts.  The United States also provided Plaintiff with full notice of its intent to move for summary judgment.  Accordingly, the Court will consider the exhibits submitted by Defendant and construe Defendant's Motion pursuant to Rule 56.[4]

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A court must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General

---

[4] Defendant also did not submit a Statement of Material Facts in support of its Motion, and thus failed to comply with Local Rule 7.1(a)(3).  The Court does not look lightly upon Defendant's failure to comply with the Local Rules.  However, as noted above, the dispute between the parties is primarily one of legal interpretation, rather than a contest over facts.  Therefore, the Court will exercise its discretion to construe the Motion pursuant to Rule 56 despite Defendant's failure to comply with Local Rule 7.1(a)(3).  See Holtz v. Rockefeller & Co., 258 F.2d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules"); Club Protector, Inc. v. J.G. Peta, Inc., No. 01CV0191, 2001 WL 1217215, *2 (N.D.N.Y. Sep. 12, 2001) (waiving requirement that moving party submit a Statement of Material Facts due in part to the "the parties essentially agree[ing] on the underlying facts").

Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden of demonstrating that no genuine issue of material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted).

**B.      Discussion**

**1.      January 16, 2005 medical treatment**

Plaintiff alleges that on January 16, 2005, while in BOP custody assigned to the CCC, she fell ill and required emergency medical attention. Compl. ¶ 11. The United States moves for summary judgment on Plaintiff's claim related to her January 2005 medical expenses, asserting that the claim is barred by the FTCA's statute of limitations and that the BOP did not breach a duty to Plaintiff because Plaintiff failed to follow proper procedures to notify the BOP of her medical treatment.

Prior to her placement in the CCC, Plaintiff signed a Community Based Program Agreement ("the Agreement"), which provided in relevant part that

> I understand that I am expected to assume financial responsibility for my health care while a resident of a community-based correctional program. . . . I understand that no medical care may be provided to me at Government expense without prior authorization of the Bureau of Prisons.

8

Agreement (Dkt. No. 13, Ex. 2b). The BOP's Community Corrections Manual also provides that "Inmates in CCCs are expected to become financially self-sufficient and therefore, bear the cost of medical care." Program Statement 7300.09, Community Corrections Manual, § 5.12.2. (Dkt. No. 13, Ex. 2c).

When Plaintiff required medical treatment on January 16, 2005, she did not seek authorization from the BOP for payment. Therefore, pursuant to the Agreement, the BOP has no obligation to pay for those medical expenses. In her opposition to Defendant's Motion, Plaintiff does not deny that she failed to follow the procedures outlined in the Agreement. Rather, she argues that the Agreement itself violates 18 U.S.C. § 4042(a)(2) and is therefore void. This argument is without merit. The statute provides that "[t]he Bureau of Prisons, under the direction of the Attorney General, shall – [] provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise[.]" 18 U.S.C. § 4042(a)(2). Plaintiff is correct that a contractual provision that conflicts with a statutory duty is unenforceable. See California v. United States, 271 F.3d 1377, 1383 (Fed. Cir. 2001). However, the Court does not read the statute as prohibiting the BOP from contracting with Plaintiff that no medical treatment may be provided to her at the Government's expense without prior authorization of the BOP, nor does Plaintiff provide any authority that would warrant such a reading of the statute. Therefore, Defendant's Motion for summary judgment as to this claim is granted.[5]

**2.    July and August 2005 medical treatment**

---

[5] As the Court is granting Defendant's Motion for summary judgment on the grounds that Plaintiff failed to comply with the terms of the Agreement, the Court need not address whether Plaintiff's claim falls with the FTCA's statute of limitations.

The Court modified the conditions of Plaintiff's supervised release on June 8, 2005, ordering her to be placed at the CCC for 90 days and to "abide by all the rules and regulations of the CCC" due to Plaintiff's "numerous technical violations." Compl. ¶ 13 and Ex. 2. While residing at the CCC, Plaintiff received medical treatment on July 12, 2005 and was later hospitalized between July 17, 2005 and August 8, 2005. Plaintiff argues that the BOP had a statutory obligation pursuant to 18 U.S.C. § 4042(a)(2) to pay for these expenses. Defendant argues that Plaintiff was not in BOP custody when residing at the CCC pursuant to her supervised released and that the BOP, therefore, had no duty to cover her medical expenses.

The United States is entitled to summary judgment as to Plaintiff's claims regarding her July and August 2005 medical expenses. When Plaintiff was housed at the CCC in July and August 2005 as a condition of her supervised release, she was under the supervision of the U.S. Probation Office ("USPO"), not in official BOP custody. Dkt. 13, Ex. 2a; see also Duncan v. United States, No. CV. 06-921, 2007 WL 641816, at *2 (D. Or. Feb. 22, 2007) ("Supervised release to a CCC, regardless of the severity of the restrictions imposed, is not considered 'official detention' as the individual is not in BOP custody.") (citing Reno v. Koray, 515 U.S. 50, 61-64 (1995)); Statement of Work, Residential Reentry Center, Ch. 18 at 101 (Dkt. No. 13, Ex. 2a) ("Ordinarily, USPOs are responsible for the overall supervision of offenders who are placed in a [CCC] as a condition of . . . supervised release . . . All medical and dental expenses for persons under supervision of a USPO are the responsibility of the offender.").

Plaintiff argues that 18 U.S.C. § 4042(a)(2)– specifically, the provision that the BOP shall provide "for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses *or otherwise*" (emphasis added)–requires the

10

BOP to cover her medical expenses while she was housed at the CCC in July and August 2005. However, the Court does not read the statutory language as requiring that the BOP cover Plaintiff's medical expenses while housed at a CCC pursuant to supervised release, when she was under the supervision of the USPO.  As Plaintiff was not in BOP custody during July and August 2005, she was not being held by the BOP, and the BOP had no duty to cover the costs of the medical expenses Plaintiff incurred during that period.  Accordingly, Defendant's Motion for summary judgment as to these claims is granted.

**IV.   CONCLUSION**

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion for default judgment (Dkt. No. 11) is **DENIED;** and it is further

**ORDERED**, that Defendant's Motion to vacate default (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 12) is **GRANTED** and Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     June 26, 2009
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge